Kc7WlevP

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                          20 Cr. 440 (JGK)

 5   ARIK LEV,

 6              Defendant.
                                           Plea (via telephone)
 7   ------------------------------x

 8                                         New York, N.Y.
                                           December 7, 2020
 9                                         10:00 a.m.

10   Before:

11
                        HON. JOHN G. KOELTL,
12
                                           District Judge
13
                            APPEARANCES
14
     AUDREY STRAUSS
15        Acting United States Attorney for
          the Southern District of New York
16   BY:  JACOB R. FIDDELMAN
          Assistant United States Attorney
17
     COVINGTON & BURLING LLP
18        Attorneys for Defendant
     BY:  ALAN M. VINEGRAD
19

20

21

22

23

24

25
```

Kc7WlevP

```
 1              (Case called; appearances noted)

 2              THE COURT:  Good morning.

 3              I note that Mr. Lev is present.

 4              All right.  We're doing the proceeding this morning by

 5    videoconference.  There's a national emergency as a result of

 6    the pandemic.  There's a court emergency also, which our chief

 7    judge has declared, as a result of the pandemic.  The interests

 8    of justice would be harmed if we didn't go forward with the

 9    proceeding today because this is a criminal proceeding, and I

10    understand that there's a desire to have the defendant enter a

11    plea to a superseding information.  We can't all be present in

12    court because we've restricted in-person court proceedings in

13    the courthouse.

14              I understand that the defendant has consented that the

15    proceeding may proceed by videoconference.  I'm not sure

16    whether the defendant has signed a written waiver yet or

17    authorized his attorney to do that.

18              Mr. Vinegrad.

19              MR. VINEGRAD:  I mean I can sign it.  It hasn't been

20    tendered to me, but I'm happy to execute it promptly upon the

21    end of this proceeding today.

22              THE COURT:  OK.  Fine.  Mr. Fletcher will send you a

23    copy and consent will then be filed.

24              Meanwhile, Mr. Lev, do you agree knowingly and

25    voluntarily to have this proceeding by videoconference and to
```

Kc7WlevP

```
1    waive your right to be physically present for the conference?

2              Mr. Lev.

3              THE DEFENDANT:  Do you hear me?

4              THE COURT:  Mr. Lev, do you agree that the conference

5    can proceed by videoconference, and do you waive your right to

6    be present physically --

7              THE DEFENDANT:  Yes.

8              THE COURT:  -- in court for this proceeding?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  OK.  I find that the defendant has

11   consented knowingly and voluntarily.

12             I should also add at the outset, Mr. Lev, if at any

13   time you want to consult with your lawyer, Mr. Vinegrad, just

14   let us know and we'll make arrangements so that you and your

15   lawyer can consult privately without anyone else listening in.

16   And similarly, if Mr. Vinegrad wants to talk to you, he can do

17   that.  Just let us know.

18             Do you understand, Mr. Lev?

19             THE DEFENDANT:  Yes, your Honor.  Thank you.

20             THE COURT:  OK.

21             Mr. Vinegrad.

22             MR. VINEGRAD:  Yes, I understand.

23             THE COURT:  I should also point out at the outset

24   Mr. Vinegrad is from Covington.  I know people personally and

25   professionally at Covington.  My deputy once applied for a job
```

Kc7WlevP

1    at Covington, unsuccessfully.  Nothing about that affects

2    anything that I do in the case, but I bring those connections

3    to you at the outset.

4          As another preliminary matter, I don't believe that

5    I've had the opportunity to get together with all of you after

6    Federal Rule of Criminal Procedure 5 was amended, so let me --

7          That's correct, right; I haven't spoken to you.

8          MR. VINEGRAD:  Correct, your Honor.

9          THE COURT:  OK.  Pursuant to Federal Rule of Criminal

10   Procedure 5(f), I remind the government of its obligation,

11   under *Brady v. Maryland* and its progeny, to disclose to the

12   defense all information, whether admissible or not, that is

13   favorable to the defendant, material either to guilt or to

14   punishment and known to the government.  The government must

15   make good-faith efforts to disclose such information to the

16   defense as soon as reasonably possible after its existence

17   becomes known to the government.

18         As part of these obligations, the government must

19   disclose information that can be used to impeach the trial

20   testimony of a government witness within the meaning of *Giglio*

21   *v. United States* and its progeny and must do so sufficiently --

22         Whoops.  We may have lost -- the government just left

23   the meeting so we'll have to wait until the connection with the

24   government is reestablished.

25         So much for the efficiency of Skype for Business.

Kc7WlevP

|    |    |
|----|----|
| 1  | MR. VINEGRAD:  I've had a lot more success, your |
| 2  | Honor, with Zoom.  I know it wasn't getting a lot of favorable |
| 3  | feedback back in March and April, but I think they've improved, |
| 4  | and that, from my experience, has been the mechanism of choice. |
| 5  | I'm trying hard to convince my law firm of the same. |
| 6  | THE COURT:  I've had good experience with Zoom also. |
| 7  | MR. VINEGRAD:  Yeah, so -- I assume it's OK if we chat |
| 8  | until the government comes back.  I mean I just actually |
| 9  | presided over a mock trial. |
| 10 | THE COURT:  I should stop. |
| 11 | MR. VINEGRAD:  That's fine. |
| 12 | MR. FIDDELMAN:  Hello.  This is Jacob Fiddelman again. |
| 13 | I was disconnected by the system.  I apologize. |
| 14 | THE COURT:  No problem.  We don't have your video. |
| 15 | MR. FIDDELMAN:  Yes, your Honor. |
| 16 | For some reason when I try and rejoin with the video |
| 17 | I'm now getting a message that there's a Skype outage.  I |
| 18 | dialed in by telephone so that the proceeding was not further |
| 19 | delayed, and I'll ask, with the Court's permission, to permit |
| 20 | me to simply appear by telephone so that the proceeding can |
| 21 | continue. |
| 22 | THE COURT:  All right.  That's very gracious. |
| 23 | Does the defense have any objection to that? |
| 24 | MR. VINEGRAD:  No, your Honor. |
| 25 | THE COURT:  OK.  We'll proceed. |

Kc7WlevP

1          In your absence, Mr. Fiddelman, we were just

2     commenting that there are problems with Skype and that people's

3     experience with Zoom has been better.

4          MR. FIDDELMAN:  Yeah, I would agree with that, your

5     Honor, in my personal experience.

6          THE COURT:  OK.

7          Where I was was I was reading the warning under

8     current Rule of Criminal Procedure 5(f).

9          I saw the point at which you, Mr. Fiddelman, lost

10    contact with us, and it was towards the beginning of that

11    warning, so I'll -- is that correct?

12         MR. FIDDELMAN:  Yes, that's correct.

13         THE COURT:  OK.  So I'll start at the beginning with

14    the warning.

15         Pursuant to Federal Rule of Criminal Procedure 5(f), I

16    remind the government of its obligation, under *Brady v.*

17    *Maryland* and its progeny, to disclose to the defense all

18    information, whether admissible or not, that is "favorable to"

19    the defendant, "material either to guilt or to punishment," and

20    known to the government.  The government must make good-faith

21    efforts to disclose such information to the defense as soon as

22    reasonably possible after its existence becomes known to the

23    government.

24         As part of these obligations, the government must

25    disclose information that can be used to impeach the trial

Kc7WlevP

testimony of a government witness, within the meaning of *Giglio*

*v. United States* and its progeny, and must do so sufficiently

in advance of trial in order for the defendant to make

effective use of it at trial.

I remind you that these obligations are continuing

ones and that they apply to information whether or not the

government credits it.  I further remind the government that,

for these purposes, "the government" includes any federal,

state and local prosecutors; law enforcement officers and other

officials who have participated in the investigation and

prosecution of the charged offense or offenses, whether or not

such officials are still part of the team; that the government

has an affirmative obligation to seek from these sources all

information subject to disclosure.

Finally, I caution the government that if it fails to

comply with this order any number of consequences may follow:

One, I may order production of information and specify

the terms and conditions of such production;

Two, I may grant a continuance;

Three, I may impose evidentiary sanctions;

Four, I may impose sanctions on any responsible lawyer

for the government;

Five, I may dismiss charges before trial or vacate a

conviction after trial or a guilty plea; or

Six, I may enter any other order that is just under

Kc7WlevP

1    the circumstances.

2              Mr. Fiddelman, do you understand these obligations and

3    confirm that you have fulfilled or will fulfill them?

4              MR. FIDDELMAN:  Yes, your Honor, I can confirm.  Thank

5    you.

6              THE COURT:  OK.  In accordance with Rule (f), I will

7    check the docket sheet to see if I've already entered a written

8    order confirming the government's *Brady* obligations, and if

9    not, I'll enter such an order following this proceeding.

10             Do the parties know, by the way, if I've already

11   entered the 5(f) order?

12             MR. FIDDELMAN:  I am looking right now, your Honor.

13   One moment, please.

14             It looks like your Honor has.

15             THE COURT:  OK.  I have entered the order already?

16             MR. FIDDELMAN:  Yes, your Honor.  You have.

17             THE COURT:  OK.  Great.  Thank you.

18             Mr. Fiddelman, tell me where we are.

19             MR. FIDDELMAN:  So, your Honor, the parties have

20   reached a proposed disposition that involves the defendant

21   waiving indictment, agreeing to proceed by a superseding

22   information and entering a plea of guilty to that one-count

23   superseding information charging a violation of 18 U.S.C.

24   Section 371.

25             THE COURT:  All right.  In the papers I have before

Kc7WlevP

1    me, I don't have the waiver.  Has the defendant entered the

2    waiver?

3         MR. FIDDELMAN:  Yes, your Honor, he has.  It was

4    transmitted to Mr. Fletcher by email over the weekend, I

5    believe.  I would be happy to resend it.

6         THE DEPUTY CLERK:  All right.  The clerk thought that

7    was forwarded, but let me --

8         THE COURT:  It may have been and I may not have

9    checked my email, so if you'd just take a moment to bring it

10   in.

11        Mr. Fletcher is just outside the courtroom.

12        THE DEPUTY CLERK:  All right.  Let's see.

13        MR. FIDDELMAN:  Your Honor, attached to the same email

14   was a copy of the plea agreement signed by the defense, so the

15   copy of the plea agreement that the Court has may not have been

16   signed by the defense yet, and so that additional document may

17   need to be printed and brought to the Court.

18        THE COURT:  OK.  Yes, I have the superseding

19   information and the November 17 plea agreement signed by the

20   government but not by the defense.

21        THE DEPUTY CLERK:  The clerk is printing out the

22   document as we speak.  The clerk will execute the waiver as a

23   witness and will submit it to the Court, who is in the

24   courtroom.

25        THE COURT:  OK.  There's no one in the courtroom but

Kc7WlevP

1   me, so --

2              THE DEPUTY CLERK:  Yes.

3              THE COURT:  All right.  I will include the arraignment

4   on the superseding information together with the allocution on

5   the guilty plea.

6              I take it, Mr. Vinegrad, that the defendant wishes to

7   waive indictment, agree to proceed by information and enter a

8   plea of guilty to the superseding information.

9              MR. VINEGRAD:  Yes, your Honor.

10             THE COURT:  OK.

11             Mr. Fletcher, please administer the oath to the

12  defendant.

13             THE DEPUTY CLERK:  Mr. Lev, would you please raise

14  your right hand.

15             You do so solemnly swear that what you say to this

16  Court in this proceeding shall be true and accurate, so help

17  you God?

18             THE DEFENDANT:  I hereby affirm.

19             THE DEPUTY CLERK:  Mr. Lev?  Mr. Lev, can we hear you?

20  We can't hear you.  Can you unmute?

21             THE COURT:  No.  I heard Mr. Lev say, "I hereby

22  affirm," but you can ask again.  Just --

23             THE DEPUTY CLERK:  OK.

24             Mr. Lev, do you hereby affirm that what you say to

25  this Court in this proceeding shall be true and accurate?

Kc7WlevP

| | |
|---|---|
| 1 | THE COURT:  Now I don't hear. |
| 2 | THE DEFENDANT:  Hear me now? |
| 3 | THE DEPUTY CLERK:  Yes.  I'll re-administer. |
| 4 | THE DEFENDANT:  Yes. |
| 5 | THE COURT:  Thank you. |

6    THE DEPUTY CLERK:  Do you hereby affirm that what you
7  say to this Court in this proceeding shall be true and
8  accurate?

9    THE DEFENDANT:  Yes, sir.  Yes, your Honor, I will.
10    THE DEPUTY CLERK:  You can put your hand down.
11    Please state your name for the record, your full name.
12    THE DEFENDANT:  My name is Arik Lev.
13    THE DEPUTY CLERK:  Thank you.
14    THE COURT:  Mr. Lev, do you understand that you are
15  now under oath and that if you answer any of my questions
16  falsely, your false or untrue answers may later be used against
17  you in another prosecution for or making a false statement?

18    THE DEFENDANT:  Yes, your Honor.
19    THE COURT:  Tell me your full name, please.
20    THE DEFENDANT:  My name is Arik Lev.
21    THE COURT:  How old are you?
22    THE DEFENDANT:  48.
23    THE COURT:  48?
24    THE DEFENDANT:  Yes, sir.  Yes, your Honor.
25    THE COURT:  OK.  How far did you go in school?

Kc7WlevP

1          THE DEFENDANT:  High school.

2          THE COURT:  Are you a citizen of the United States?

3          THE DEFENDANT:  No, your Honor.  I'm on a green card.

4     My wife and my kids are citizens.

5          THE COURT:  Are you able to speak and understand

6     English?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Are you now or have you recently been

9     under the care of a doctor or a psychiatrist?

10          THE DEFENDANT:  Not, your Honor.

11          THE COURT:  Have you ever been treated or hospitalized

12     for any mental illness or any type of addiction, including drug

13     or alcohol addiction?

14          THE DEFENDANT:  Not, your Honor.

15          THE COURT:  In the past 24 hours, have you taken any

16     drugs, medicine or pills, or have you drunk any alcohol?

17          THE DEFENDANT:  No, your Honor.

18          THE COURT:  Is your mind clear today?

19          THE DEFENDANT:  Yes, sir.  Yes, your Honor.

20          THE COURT:  Are you feeling all right today?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  Do either counsel have any doubt as to the

23     defendant's competence to waive indictment, agree to proceed by

24     information and enter a plea of guilty to the information at

25     this time?

Kc7WlevP

1          Mr. Vinegrad.

2          MR. VINEGRAD:  No, your Honor.

3          THE COURT:  Mr. Fiddelman.

4          MR. FIDDELMAN:  No, your Honor.

5          THE COURT:  Mr. Lev, Mr. Vinegrad, your lawyer, has

6    informed me that you wish to enter -- that you wish to waive

7    indictment, agree to proceed by information and enter a plea of

8    guilty to the superseding information.

9          Is that what you wish to do?

10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  Have you had a full opportunity to discuss

12   your case with Mr. Vinegrad and to discuss the consequences of

13   waiving indictment, agreeing to proceed by information and

14   entering a plea of guilty to the superseding information?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  Are you satisfied with Mr. Vinegrad and

17   his representation of you?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  On the basis of Mr. Lev's responses to my

20   questions and my observations of his demeanor, I find that he

21   is fully competent to enter an informed plea at this time.

22         Now, Mr. Lev, before I accept any plea from you, I'm

23   going to be asking you certain questions.  My questions are

24   intended to satisfy me that you wish to enter a plea of guilty

25   because you are, in fact, guilty and that you fully understand

Kc7WlevP

1    the consequences of your plea, and furthermore, that you are

2    pleading guilty knowingly and voluntarily and that there's

3    independent basis in fact for your plea.

4                Do you understand that?

5                THE DEFENDANT:  Yes, your Honor.

6                THE COURT:  I'm now going to describe to you certain

7    rights that you have under the Constitution and laws of the

8    United States, which rights you will be giving up if you enter

9    a plea of guilty.  Please listen to me very carefully.  If

10   there's anything that I say that you don't understand, please

11   ask me to stop and either I or Mr. Vinegrad will explain it to

12   you more fully.  All right?

13               THE DEFENDANT:  Yes, your Honor.

14               THE COURT:  Mr. Lev, under the Constitution and laws

15   of the United States, you have a right to a speedy and public

16   trial by a jury on the charges against you, which are contained

17   in the superseding information.

18               Do you understand that?

19               THE DEFENDANT:  Yes, your Honor.

20               THE COURT:  If there were a trial, you would be

21   presumed to be innocent and the government would be required to

22   prove you guilty by competent evidence and beyond a reasonable

23   doubt.  You would not have to prove that you were innocent at

24   trial.

25               Do you understand that?

Kc7WlevP

1      THE DEFENDANT:  Yes, your Honor.

2      THE COURT:  If there were a trial, a jury composed of

3  12 people selected from this district would have to agree

4  unanimously that you were guilty.

5      Do you understand that?

6      THE DEFENDANT:  Yes, your Honor.

7      THE COURT:  If there were a trial, you would have the

8  right to be represented by a lawyer, and if you could not

9  afford a lawyer, a lawyer Would be provided to you free of

10  cost.

11      Do you understand that?

12      THE DEFENDANT:  Yes, your Honor.

13      THE COURT:  In fact, Mr. Lev, you have a right to be

14  represented by a lawyer at trial and at every other stage of

15  the proceeding, and if you cannot afford a lawyer, a lawyer

16  would be provided to you free of cost.

17      Do you understand that?

18      THE DEFENDANT:  Yes, your Honor.

19      THE COURT:  If there were a trial, you would have the

20  right to see and hear all of the witnesses against you, and

21  your attorney could cross-examine them.  You would have a right

22  to have your attorney object to the government's evidence and

23  offer evidence on your behalf if you so desired, and you would

24  have the right to have subpoenas issued or other compulsory

25  process used to compel witnesses to testify in your defense,

Kc7WlevP

 1   and you would not be required to testify.

 2            Do you understand all of that?

 3            THE DEFENDANT:  Yes, your Honor.

 4            THE COURT:  If there were a trial, you would have the

 5   right to testify if you wanted to, but no one could force you

 6   to testify if you didn't want to, and furthermore, no inference

 7   or suggestion of guilt could be drawn if you chose not to

 8   testify at trial.

 9            Do you understand that?

10            THE DEFENDANT:  Yes, your Honor.

11            THE COURT:  Mr. Lev, do you understand each and every

12   one of the rights that I've described to you?

13            THE DEFENDANT:  Yes, your Honor.

14            THE COURT:  Do you have any questions about any of

15   those rights?

16            THE DEFENDANT:  No, not, your Honor.

17            THE COURT:  Do you understand that by entering a plea

18   of guilty today, you are giving up each and every one of those

19   rights; that you are waiving those rights and that you will

20   have no trial?

21            THE DEFENDANT:  Yes, your Honor.

22            THE COURT:  Do you understand that you can change your

23   mind right now and refuse to enter a plea of guilty?  You don't

24   have to enter this plea if you don't want to for any reason at

25   all.

Kc7WlevP

1          Do you understand that completely?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  Now, Mr. Lev, you've received a copy of

4    the superseding information against you, is that correct?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  All right.  Now, I have a copy of a waiver

7    of indictment.  It says, "United States of America v. Arik Lev,

8    the above-named defendant, who is accused of violating Title

9    18, United States Code, Section 371, being advised of the

10   nature of the charge and of his rights, hereby waives in open

11   court prosecution by indictment and consents that the

12   proceeding may be by information instead of by indictment."

13         This appears to be signed by you and Mr. Vinegrad.

14   It's dated December the 7th, and it's witnessed by

15   Mr. Fletcher.

16         Now, Mr. Lev, have you signed this waiver of

17   indictment?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  Before you signed it, did you discuss it

20   with your lawyer?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  Did he explain it to you?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  Do you understand what you are doing?

25         THE DEFENDANT:  Yes, your Honor.

Kc7WlevP

|     |                                                                      |
|-----|----------------------------------------------------------------------|
| 1   | THE COURT:  Do you understand that you are under                     |
| 2   | absolutely no obligation to waive indictment and agree to            |
| 3   | proceed by information?                                               |
| 4   | THE DEFENDANT:  Yes, your Honor.                                      |
| 5   | THE COURT:  Do you understand that if you did not                    |
| 6   | waive indictment and if the government wanted to prosecute you       |
| 7   | on the charge which is contained in the information, the             |
| 8   | government would have to present its case to a grand jury,           |
| 9   | which may or may not indict you?                                     |
| 10  | THE DEFENDANT:  I understand, your Honor.                            |
| 11  | THE COURT:  Do you understand that by signing this                   |
| 12  | waiver of indictment, you have given up your right to have your      |
| 13  | case presented to a grand jury?                                      |
| 14  | THE DEFENDANT:  Yes, your Honor.                                      |
| 15  | THE COURT:  Do you understand what a grand jury is?                  |
| 16  | THE DEFENDANT:  Yes, your Honor.                                      |
| 17  | THE COURT:  Did anyone make any threats or promises to              |
| 18  | you to get you to waive indictment and agree to proceed by           |
| 19  | information?                                                          |
| 20  | THE DEFENDANT:  Yes, your Honor.                                      |
| 21  | THE COURT:  Did you sign this waiver of indictment                   |
| 22  | knowingly and voluntarily?                                            |
| 23  | THE DEFENDANT:  Yes, your Honor.                                      |
| 24  | THE COURT:  I find that the defendant's waiver of                    |
| 25  | indictment is knowing and voluntary.                                  |

Kc7WlevP

1          Now, Mr. Lev, you've told me that you've seen a copy

2     of the superseding information against you.  Is that correct?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Have you discussed it with your lawyer?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Do you want me to read it aloud to you in

7     open court, or do you wish to give up -- or waive -- the

8     reading of the information?

9          THE DEFENDANT:  I wish to give up this reading because

10    my lawyer discussed with me.  Thank you.

11         THE COURT:  OK.  All right.  I'm going to go over the

12    information with you in any event because I want to make sure

13    that you understand what the government would be required to

14    prove beyond a reasonable doubt before you could be convicted

15    of the charge at trial, and I also want to make sure that you

16    understand what the maximum penalties are for the charge.

17         The information charges a conspiracy to commit bank

18    fraud and wire fraud.  It charges, in substance, that from at

19    least in or about January 2018 up to and including at least in

20    or about November 2019, in the Southern District of New York

21    and elsewhere, Arik Lev, the defendant, and others known and

22    unknown, willfully and knowingly did combine, conspire,

23    confederate and agree together and with each other to commit

24    offenses against the United States, to wit, wire fraud, in

25    violation of Title 18, United States Code, Section 1343, and

Kc7WlevP

bank fraud, in violation of Title 18, United States Code,

Section 1344.  It was a part and an object of the conspiracy

that Arik Lev, the defendant, and others known and unknown,

willfully and knowingly, having devised and intending to devise

a scheme and artifice to defraud and for obtaining money and

property by means of false and fraudulent pretenses

representations and promises would and did transmit and cause

to be transmitted by means of wire and radio communication in

interstate and foreign commerce writings, signs, signals,

pictures and sounds for the purpose of executing such scheme

and artifice, in violation of Title 18, United States Code,

Section 1343.

          In furtherance of the conspiracy and to effect the

illegal object thereof, the following overt acts, among

others -- it says others, but there's only one charged --

following overt act, among others, was committed in the

Southern District of New York and elsewhere, namely, on or

about February 16, 2018, Arik Lev, the defendant, caused to be

submitted an electronic loan application for a vehicle

purchased on behalf of a straw purchaser that contained false

and fraudulent misrepresentations after causing the straw

purchaser to travel through the Southern District of New York

to the car dealership at which the loan application was

prepared and submitted, in violation of Title 18, United States

Code, Section 371.

Kc7WlevP

1          Do you understand that's a summary of the charge

2     against you in Count One of the superseding information?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  And you understand if you did not plead

5     guilty the government would be required to prove beyond a

6     reasonable doubt at trial:

7          First, that two or more persons entered into the

8     unlawful agreement charged in the information, starting in or

9     about January 2018;

10          Second, that you, the defendant, knowingly and

11     willfully became a member of the conspiracy;

12          Third, that one of the members of the conspiracy

13     knowingly committed at one overt act charged in the information

14     in furtherance, in order to further some objective of the

15     conspiracy.

16          Do you understand the government would be required to

17     prove all of that beyond a reasonable doubt at trial?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Do you understand that the maximum penalty

20     for the crime charged in Count One is a maximum of five years'

21     imprisonment; a maximum term of three years' supervised

22     release; a maximum fine of the greatest of $250,000 or twice

23     the gross pecuniary gain derived from the offense or twice the

24     gross pecuniary loss to a person or persons other than yourself

25     as a result of the offense; and a $100 mandatory special

Kc7WlevP

1    assessment?

2             Do you understand that's the maximum penalty for the

3    crime charged in Count One of the information?

4             THE DEFENDANT:  Yes, your Honor.

5             THE COURT:  Do you also understand that when I talk

6    about supervised release, supervised release means that you

7    will be subject to monitoring when you are released from prison

8    and that the monitoring is to be under terms and conditions

9    which could lead to reimprisonment without a jury trial if you

10   violate them?

11            THE DEFENDANT:  Yes, your Honor.

12            THE COURT:  Do you understand that if you violated the

13   terms of supervised release and were sentenced to prison, you

14   could be sentenced to prison for the entire term of supervised

15   release without any credit for any time you had already spent

16   on supervised release?

17            THE DEFENDANT:  Yes, your Honor.

18            THE COURT:  Do you also understand that as part of

19   your sentence I can also order restitution to any person

20   injured as a result of your criminal conduct?

21            THE DEFENDANT:  Yes, your Honor.

22            THE COURT:  The information also includes a forfeiture

23   allegation.  It charges that as a result of committing the

24   offense charged in Count One, you, the defendant, shall forfeit

25   to the United States any and all property, real and personal,

Kc7WlevP

1    that constitutes or is derived from proceeds traceable to the

2    commission of the offense, including, but not limited to, a sum

3    of money in United States currency representing the amount of

4    proceeds traceable to the commission of the offense, and if any

5    of that forfeitable property cannot be located or has been

6    transferred or deposited with a third person or placed beyond

7    the jurisdiction of the court or substantially diminished in

8    value or commingled with other property, then it's the intent

9    of the government to seek forfeiture of any other property that

10   you have up to the value of the forfeitable property.

11           Do you understand that?

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  So do you understand that as part of your

14   sentence I can also order forfeiture?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  Do you also understand that if I accept

17   your guilty plea and adjudge you guilty, that adjudication can

18   be used to remove you from the United States, to deny you

19   citizenship, to deny you admission to the United States in the

20   future?

21           Do you understand that?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  And have you consulted with your lawyer

24   about the immigration consequences of your guilty plea?

25           THE DEFENDANT:  Yes, your Honor.

Kc7WlevP

1          THE COURT:  Do you also understand that if I accept

2     your guilty plea and adjudge you guilty, that adjudication may

3     deprive you of valuable civil rights, such as the right to

4     vote, the right to hold public office, the right to serve on a

5     jury and the right to possess any kind of firearm?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Now, Mr. Lev, under current law, there are

8     sentencing guidelines that judges must consult in determining

9     your sentence.  You've spoken to your attorney about the

10    sentencing guidelines, haven't you?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Do you understand that I, as the

13    sentencing court, will not be able to determine your guidelines

14    sentence until after a presentence report has been completed by

15    the probation department and after you and your lawyer and the

16    government have had a chance to challenge any of the facts

17    reported by the probation department?

18         THE DEFENDANT:  I understand, your Honor.

19         THE COURT:  And do you also understand that even after

20    it's determined what guideline sentencing range applies in your

21    case, I have the authority, in some circumstances, to depart

22    upward or downward from the sentencing guideline range that is

23    otherwise called for by the guidelines?

24         Do you understand that?

25         THE DEFENDANT:  Yes, your Honor.

Kc7WlevP

1          THE COURT:  And even after I've made that

2     determination of the appropriate guidelines sentencing range,

3     taking into account any upward or downward departures, I must

4     then consult other statutory factors in order to arrive at a

5     final conclusion as to what the appropriate and reasonable

6     sentence is in your case.

7          Do you --

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  -- understand that?

10         Do you understand that?

11         THE DEFENDANT:  Yes, your Honor.  Thank you.  Yeah.

12         THE COURT:  And do you also understand that if you are

13    sentenced to prison, parole has been abolished and you will not

14    be released any earlier on parole?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  You paused.  Do you understand that?  Do

17    you want me to explain that to you?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  OK.  There used to be a system, in the

20    federal system, whereby it was possible for a defendant to be

21    released substantially before the term of imprisonment had

22    ended if there was a favorable decision by the parole

23    commission or the parole board so that the defendant would only

24    have to spend a fraction of the time that was imposed as a

25    sentence on the defendant.  That system of parole has now been

Kc7WlevP

1    abolished in the federal system so that when a sentence is

2    imposed on a defendant, the defendant will serve that sentence

3    except for what is known as good-time credit, which amounts to

4    a little less than two months for every full year that the

5    defendant spends in prison.

6            So I advise you that the system of parole has been

7    abolished so that you would not be released any earlier on

8    parole.

9            THE DEFENDANT:  I understand, sir.  Thank you.

10           THE COURT:  OK.

11           THE DEFENDANT:  I understand.

12           THE COURT:  Do you also understand that if your lawyer

13   or anyone else has attempted to estimate or predict what your

14   sentence will be, that their estimate or prediction could be

15   wrong?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  No one, Mr. Lev -- not your lawyer, not

18   the government -- can or should give you any assurance of what

19   your sentence will be since that sentence can only be

20   determined after the probation department has completed the

21   presentence report, after I have ruled on any challenges to the

22   report, and after I've determined what the appropriate and

23   reasonable sentence is in your case.

24           Do you understand that?

25           THE DEFENDANT:  Yes, your Honor.

Kc7WlevP

1          THE COURT:  And do you also understand that even if

2    your sentence is different from what your lawyer or anyone else

3    told you that it might be or if it's different from what you

4    expect it to be, you'll still be bound by your guilty plea and

5    you will not be allowed to withdraw your plea of guilty?

6          Do you understand that?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Now, Mr. Lev, I've been given the plea

9    agreement, which is a November 17, 2020, letter, addressed to

10   your lawyer, Mr. Vinegrad, from the government.  It's signed by

11   Mr. Fiddelman and approved by Ms. Mermelstein.  It appears to

12   have been signed by you on November the 17th and approved by

13   Mr. Vinegrad on December 2, 2020.  I'll mark that as Court

14   Exhibit 1.

15         Have you signed this plea agreement?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Did you read the agreement before you

18   signed it?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  Did you discuss it with your lawyer before

21   you signed it?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  Did you fully understand the agreement

24   before you signed it?

25         THE DEFENDANT:  Yes, your Honor.

Kc7WlevP

1          THE COURT:  Does this letter agreement constitute your

2     complete and total understanding of the entire agreement

3     between the government, your lawyer and you?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Is everything that you understand about

6     your plea and your sentence contained in this plea agreement?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Has anything been left out?

9          THE DEFENDANT:  There's not, your Honor.  The judge,

10    just the sealing.  That's what I understand.

11         THE COURT:  OK.  You're right.  The judge is not bound

12    by this plea agreement at all.

13         Do you understand that?

14         THE DEFENDANT:  Yes.  Yes, your Honor.

15         THE COURT:  OK.  Has anyone offered you any

16    inducements or threatened you or forced you to plead guilty or

17    to enter into the plea agreement?

18         THE DEFENDANT:  Not, your Honor.

19         THE COURT:  There is a provision in the plea agreement

20    that says, "It is agreed that the defendant will not file a

21    direct appeal nor bring a collateral challenge, including, but

22    not limited to, an application under Title 28, United States

23    Code, Section 2255 and/or Section 2241 of any sentence within

24    or below the stipulated guideline range of 33 to 41 months'

25    imprisonment.

Kc7WlevP

| | |
|---|---|
| 1 | Do you understand that? |
| 2 | THE DEFENDANT:  Yes, your Honor. |
| 3 | THE COURT:  So do you understand that if I sentenced |
| 4 | be to 41 months' imprisonment or less, you have given up your |
| 5 | right to appeal any such sentence or to challenge any such |
| 6 | sentence in any habeas corpus proceeding? |
| 7 | Do you understand that? |
| 8 | THE DEFENDANT:  Yes, your Honor. |
| 9 | THE COURT:  Do you also understand that you have given |
| 10 | up, or waived, your right to appeal any term of supervised |
| 11 | release of three years or less, any fine of -- |
| 12 | It says 150,000, but I would have thought it should |
| 13 | read 250,000. |
| 14 | MR. FIDDELMAN:  Your Honor -- |
| 15 | MR. VINEGRAD:  Sorry. |
| 16 | THE COURT:  Go ahead, please. |
| 17 | MR. FIDDELMAN:  So, the $150,000 number is correct. |
| 18 | The waiver applies to the top of the guidelines range for |
| 19 | the -- |
| 20 | THE COURT:  You're right. |
| 21 | MR. FIDDELMAN:  -- rather than the statutory maximum. |
| 22 | THE COURT:  Thank you.  You're right.  You're right. |
| 23 | Mr. Lev, do you understand that you've waived any |
| 24 | right to appeal any fine of $150,000 or less and any special |
| 25 | assessment of $100 or less? |

Kc7WlevP

1                Do you --

2                THE DEFENDANT:  Yes, I do.

3                THE COURT:  -- understand?

4                OK.

5                The plea agreement also reaffirms that, as I've told

6      you, that because you're not a citizen of the United States,

7      your guilty plea and conviction make it very likely that you

8      will be removed from the United States and that you're

9      presumptively, and that's presumptively mandatory and that at a

10     minimum you are at risk of being removed or suffering other

11     adverse immigration consequences.

12                Do you understand that?

13                THE DEFENDANT:  Yes, your Honor.

14                THE COURT:  And it affirms that you've discussed the

15     possible immigration consequences, including removal, as a

16     result of your guilty plea and conviction with your lawyer.  Is

17     that right?

18                THE DEFENDANT:  Yes, your Honor.

19                THE COURT:  OK.  As you mentioned before, you

20     understand that the Court is not bound by the plea agreement or

21     by any of the provisions of the plea agreement; the Court has

22     to make an independent determination of the appropriate

23     sentence in your case, and even if that sentence differs from

24     anything that's contained in the plea agreement, you will still

25     be bound by your guilty plea and you will not be allowed to

Kc7WlevP

1   withdraw your plea of guilty.

2               Do you understand that?

3               THE DEFENDANT:  Yes, your Honor.

4               THE COURT:  Mr. Vinegrad, do you know of any valid

5   defense that would prevail at the trial of Mr. Lev?

6               MR. VINEGRAD:  No, your Honor.

7               THE COURT:  Do you know of any reason why Mr. Lev

8   should not be permitted to plead guilty?

9               MR. VINEGRAD:  No, your Honor.

10              THE COURT:  OK.

11              Mr. Lev, tell me what you did in connection with the

12   crime to which you are entering a plea of guilty.

13              THE DEFENDANT:  So, your Honor, in 2018 to '19, I was

14   agree with other people to do a transactions that basically

15   buy, buy cars and pay for them and move, put them into a rental

16   company without to tell it to the financial institute for the,

17   to the bank that loan money for the vehicle, that the car will

18   be used for, to do rental, rent a car.  And has make a false

19   statements to the financial company and they will -- we also

20   didn't tell them that we, I will pay the payments of the

21   vehicle, not the people that bought the car.  So we didn't tell

22   them that, who was going to pay for the vehicle, that I was the

23   one that's paying for the vehicle, and I understand that was --

24   Ivan was involved in applications to the banks to approve the

25   transactions.  And I'm very sorry that's happen.

Kc7WlevP

| | |
|---|---|
| 1 | I wasn't aware that, in that time that I did something |
| 2 | wrong.  I'm fully aware that this was wrong, and if I had the |
| 3 | chance again, I will not do it again, anything connected with |
| 4 | something like that.  That's why I want to take responsibility |
| 5 | on my conduct, and I'm sorry for that. |
| 6 | THE COURT:  OK. |
| 7 | MR. FIDDELMAN:  Your Honor, I'm sorry to interrupt.  I |
| 8 | just have a question. |
| 9 | I'm not sure I understood something that the defendant |
| 10 | said.  I thought he said he was not aware at the time that he |
| 11 | was doing something wrong, but I may have misheard it. |
| 12 | THE COURT:  I was going to follow up, but as long as |
| 13 | the government asks the question, Mr. Lev -- |
| 14 | THE DEFENDANT:  Yeah, I was aware that I do something |
| 15 | wrong, so -- |
| 16 | THE COURT:  At the time. |
| 17 | THE DEFENDANT:  At the time that I did, we did |
| 18 | something wrong by telling -- we didn't tell the bank, the |
| 19 | financial institute what we doing, what we going to use the car |
| 20 | for.  Yes, sir.  I was aware about that, and that's why I want |
| 21 | to plead guilty for. |
| 22 | THE COURT:  All right.  Let me go back. |
| 23 | Between 2018 and 2019, you agreed with others to do |
| 24 | transactions that would, the object of which was to buy cars, |
| 25 | is that right? |

Kc7WlevP

1          THE DEFENDANT:  Yes.  Yes, your Honor.

2          THE COURT:  OK.

3          THE DEFENDANT:  Buy them and --

4          THE COURT:  And the cars would be put into a rental

5     company.

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  And in order to buy the cars, there were

8     transaction documents that were submitted to banks in order to

9     finance the purchase of the cars.

10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  Is that right?

12         THE DEFENDANT:  Yes, your Honor, and I paid for the

13    cars and the bank paid for the cars.

14         THE COURT:  OK.  You paid for the car.  The banks paid

15    for the cars.  You agreed to make payments to the banks in

16    order to pay for the cars, but the financing documents

17    indicated that other people were going to be making the

18    payments rather than you.

19         THE DEFENDANT:  Exactly, your Honor.  That's exact --

20         THE COURT:  And those were false statements to the

21    banks.

22         THE DEFENDANT:  Yes, your Honor.  That I was the one

23    that paying for the vehicle.

24         THE COURT:  You were the one who was actually paying

25    for the vehicles, but other people were listed as the people

Kc7WlevP

1    who were paying for the vehicles.

2              THE DEFENDANT:  Has responsibility for the vehicle,

3    yes, sir.  Yes, your Honor.

4              THE COURT:  Has responsibility.

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  And it was not disclosed to the bank that

7    the cars were not being used for personal use but were going

8    into a rental car company.

9              THE DEFENDANT:  Yes, your Honor, exactly.

10             THE COURT:  And the financial documents otherwise

11   would have required that that be disclosed, that the cars were

12   not being used for personal use but were being used for a

13   rental car company, is that correct?

14             THE DEFENDANT:  Uh, yes.  Yes, your Honor.

15             THE COURT:  OK.  And the information says that one

16   overt act in furtherance of the conspiracy was that on or about

17   February 16, 2018, you caused to be submitted an electronic

18   loan application for a vehicle purchase on behalf of a straw

19   purchaser, someone acting as a purchaser who was not really a

20   purchaser, and that the application contained false and

21   fraudulent misrepresentations, after causing the straw

22   purchaser to travel through the Southern District of New York

23   to the car dealership at which the loan application was

24   prepared and submitted.  Did you do that?

25             THE DEFENDANT:  Yes, your Honor.

Kc7WlevP

1          THE COURT:  OK.  And --

2          THE DEFENDANT:  Me or others.

3          THE COURT:  I'm sorry.

4          THE DEFENDANT:  It's me or others that's involved in

5     this, did that.

6          THE COURT:  OK.

7          THE DEFENDANT:  Which one I did or other did it, but I

8     was involved in that.  That's why I'm here.

9          THE COURT:  You knew that there were straw purchasers,

10    people who were not really purchasing --

11         THE DEFENDANT:  Yes.

12         THE COURT:  -- in the cars for themselves --

13         THE DEFENDANT:  Yes.

14         THE COURT:  -- who traveled to the car dealership.

15    The car dealership was in New Jersey, was it?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  And --

18         THE DEFENDANT:  In New Jersey and in New York.

19         THE COURT:  Where in New York?

20         THE DEFENDANT:  Was in Brooklyn, was in New Jersey,

21    and probably some of the people pass through Manhattan to, to

22    go to the other district, in New Jersey.

23         THE COURT:  OK.

24         THE DEFENDANT:  Not --

25         THE COURT:  You knew that people were --

Kc7WlevP

1          THE DEFENDANT:  Going --

2          THE COURT:  -- were traveling through Manhattan or the

3    Bronx in order to go to the car dealership in New Jersey to

4    sign --

5          THE DEFENDANT:  Yes.

6          THE COURT:  Mr. Vinegrad --

7          THE DEFENDANT:  I don't know that.

8          THE COURT:  -- is indicating that he's uncomfortable

9    with this question.

10          MR. VINEGRAD:  I mean, obviously, your Honor, could

11    fully allocute the defendant as your Honor sees fit.  Based on

12    prior discussions with Mr. Lev, without waiving any privileges,

13    I'm not sure he's in a position to allocute that he knew that a

14    straw purchaser or purchasers were actually traveling through

15    the Southern District of New York.  We're absolutely prepared

16    to accept the government's proffer of that, which I understand

17    they are prepared to make, and for purposes of an acceptable

18    guilty plea, I do think that is legally sufficient, so that's

19    why I was --

20          THE COURT:  OK.

21          MR. VINEGRAD:  -- my head.

22          THE COURT:  I don't want Mr. Lev to say anything that

23    is not accurate or that he doesn't know.

24          You probably understand, Mr. Lev, that the reason for

25    the questions I'm asking is a technical concept of venue.  A

Kc7WlevP

defendant has the right to be prosecuted for a crime in a

district where the crime occurred, and a crime occurs -- the

crime of conspiracy occurs where the conspiracy is formed or

where any overt act in furtherance of the conspiracy is

committed.  And an overt act can be committed by the defendant

or by any coconspirator.

　　　　And so one way of committing an overt act would be if

a person moved through or was caused, rather caused to be moved

through the Southern District of New York in furtherance of the

conspiracy.  The Southern District of New York includes

Manhattan, the Bronx, Westchester and some northern counties.

It does not include New Jersey.

　　　　So could the government make a proffer as to why venue

is proper in the Southern District of New York.

　　　　THE DEFENDANT:  Are you asking me for --

　　　　THE COURT:  No, no.  I'm asking the government lawyer

to make a statement of how the government would prove venue for

this crime in the Southern District of New York.

　　　　And the defendant can waive venue.  The defendant can

agree that venue would be established and, in any event, could

waive the requirement of venue and agree that the charge could

be prosecuted in the Southern District of New York, but let's

hear from the government how the government would prove venue

at trial.

　　　　Mr. Fiddelman.

Kc7WlevP

1          MR. FIDDELMAN:  Yes, your Honor.  Thank you.

2          The conspiracy in this case involved transactions

3     occurring at a number of different car dealerships.  Some of

4     those dealerships were in New Jersey, and the defendant's

5     dealership and rental business was in Brooklyn, New York.  The

6     various transactions in furtherance of the conspiracy involved

7     events occurring at both locations.

8          With respect to events in New Jersey, those

9     transactions involved coconspirators -- namely, the codefendant

10    charged in this case, Ivan Magidov -- and others traveling from

11    Brooklyn through the Southern District of New York to get to

12    New Jersey.

13         Vice versa, the occurrences in Brooklyn involved the

14    straw purchasers, both of whom were New Jersey residents,

15    traveling through the Southern District of New York to get from

16    New Jersey to Brooklyn.  So there were numerous instances of

17    travel in furtherance of the conspiracy through the Southern

18    District of New York.

19         THE COURT:  OK.

20         Mr. Lev are you prepared to accept that the government

21    could prove venue in the Southern District of New York if there

22    were acts in furtherance of the conspiracy by coconspirators

23    that occurred in the Southern District of New York; namely,

24    Manhattan, the Bronx, Westchester, or some northern counties?

25         Brooklyn is not in the Southern District of New York,

Kc7WlevP

1    nor is New Jersey.

2             THE DEFENDANT:  Yes, your Honor.  I accept that it's

3    not me personally who did it, and I wasn't -- yes, sir.

4             THE COURT:  OK.  And as I said, you're perfectly

5    prepared to consult with your lawyer at any time.

6             THE DEFENDANT:  OK.

7             MR. VINEGRAD:  Just to be clear, I think what he's

8    saying is even though he did not personally travel through the

9    Southern District of New York and he doesn't know of his

10   personal knowledge whether other people did, he is agreeable

11   and prepared to accept the government's proffer on venue.

12            THE DEFENDANT:  Yes.

13            THE COURT:  OK.  All right.  And if there's any doubt

14   about that, does the defendant waive any defense of improper

15   venue?

16            Mr. Vinegrad.

17            MR. VINEGRAD:  The answer -- he does.

18            THE COURT:  Do you agree with that, Mr. Lev?

19            THE DEFENDANT:  Yes, your Honor.

20            THE COURT:  OK.  When you did the acts that you

21   described to me, did you know that what you were doing was

22   wrong and illegal?

23            THE DEFENDANT:  Yes, your Honor, because the parts are

24   fitting.  Yes, your Honor.

25            THE COURT:  I'm sorry.

Kc7WlevP

1      MR. VINEGRAD:  Yes, your Honor.  I feel very wrong

2  about it.

3      THE COURT:  OK.

4      Does the government want me to ask any other questions

5  of the defendant?

6      MR. FIDDELMAN:  I don't believe so, your Honor.  Thank

7  you.

8      THE COURT:  OK.  Tell me what the government's

9  evidence would be at trial against the defendant.

10      MR. FIDDELMAN:  Yes, your Honor.

11      At trial the government would present evidence,

12  proving beyond a reasonable doubt, that in or about 2018 the

13  defendant and others were part of a conspiracy to defraud banks

14  and auto lenders into extending auto loans under false

15  pretenses.

16      The defendants first purchased high-end automobiles at

17  auction and then increased the price of those vehicles and

18  resold them back to himself through undisclosed straw

19  purchasers who had good personal credit scores.  Those

20  transactions were financed, and the loan applications submitted

21  on behalf of the straw purchasers falsely stated that the straw

22  purchasers were buying the vehicles for their own personal use

23  and were buying them themselves when, in fact, the defendants

24  had promised to pay the loans on the vehicle, immediately took

25  possession of each of the vehicles after the straw transaction,

Kc7WlevP

 1  and then used the vehicles to start a street rental business.

 2          As a result the defendant both received the loan

 3  proceeds from the bank and also received the vehicle, thereby

 4  stealing the loan proceeds from the bank through fraud.  The

 5  defendant then stopped making payments on the vehicles shortly

 6  thereafter, and all of the loans defaulted.

 7          The total amount of money that the banks were

 8  defrauded out of in this scheme was in excess of $1 million.

 9  Some of the banks were FDIC-insured and some of the banks were

10  located in states other than New York and received false loan

11  applications over the internet.

12          The defendant, Arik Lev, specifically was one of the

13  principal architects who supervised the scheme.  He owned the

14  car dealership and rental business that were involved in the

15  offense, and he purchased the vehicles at auction with his own

16  money to accomplish this scheme at the outset.

17          He directed one of his employees, codefendant Ivan

18  Magidov, to prepare and submit several false loan applications

19  among other tasks.

20          Lev also retained possession of each of the vehicle

21  and the loan proceeds.

22          And as I previously mentioned, the conspiracy involved

23  travel through the Southern District of New York by

24  coconspirators on many occasions in furtherance of the

25  conspiracy.  And the government submits that its evidence as

Kc7WlevP

1    described would prove the defendant's guilt beyond a reasonable

2    doubt.

3                THE COURT:  Mr. Lev, there are a couple of questions

4    that I should have asked.  You've heard the government say that

5    the banks that made the loans were insured by the Federal

6    Deposit Insurance Corporation, which would be an element of the

7    offense of bank fraud as one of the objects of the conspiracy.

8                Are you prepared to accept that the government could

9    prove that the banks to which these loan applications were made

10   were insured by the Federal Deposit Insurance Corporation?

11               THE DEFENDANT:  Uh, uh, yes, your Honor.  Yes, your

12   Honor.

13               THE COURT:  OK.

14               THE DEFENDANT:  I didn't know anybody would get hurt

15   from these transactions.

16               THE COURT:  I'm sorry.  I just didn't hear the end.

17               THE DEFENDANT:  Yes, your Honor.  I say --

18               MR. FIDDELMAN:  Your Honor --

19               THE COURT:  Yes.

20               MR. FIDDELMAN:  I'm sorry.

21               THE COURT:  Hold on.  The government wanted to say

22   something.

23               Mr. Fiddelman.

24               MR. FIDDELMAN:  Thank you, your Honor.

25               I was just going to say I believe the defendant said

Kc7WlevP

1    he didn't know anyone was going to get hurt from the

2    transactions.

3              MR. VINEGRAD:  I mean this is on the issue of the

4    FDIC, I believe.

5              THE DEFENDANT:  Yeah.

6              MR. VINEGRAD:  So, yeah.  OK.

7              Your Honor, I think similar to the venue situation,

8    Mr. Lev I don't believe can allocute that he knew that one or

9    more of the financial institutions was a member of the FDIC.

10   However, he is prepared to accept the government's proffer of

11   that particular aspect of the charge.

12             THE DEFENDANT:  Yes, your Honor.  Yes, I am.

13             THE COURT:  Do you agree with what your lawyer has

14   said?

15             THE DEFENDANT:  Yes.  Uh, yes, your Honor.

16             MR. VINEGRAD:  Thank you, your Honor.

17             THE DEFENDANT:  Say something.

18             THE COURT:  OK.

19             MR. FIDDELMAN:  Your Honor --

20             THE COURT:  Yes.

21             MR. FIDDELMAN:  -- perhaps sort of in light of the

22   additional comments that the defendant has made it would make

23   sense for the Court to confirm with the defendant his *mens rea*

24   at the time of committing the offense.  As charged the

25   defendant is alleged to have conspired to deliberately defraud

Kc7WlevP

1    auto lenders out of more than a million dollars, and the

2    defendant has made certain comments during this allocution that

3    are arguably inconsistent with that.  And so I would just ask

4    that the Court confirm the defendant's *mens rea* and intent in

5    joining the conspiracy before accepting the plea.

6              THE COURT:  OK.

7              Mr. Lev, is it correct that you entered a conspiracy

8    to deprive banks of a substantial amount of money that you were

9    not entitled to get from the banks?  You submitted and caused

10   to be submitted applications with statements that were false in

11   order to get money from the banks that you were not entitled to

12   get, is that correct?

13             THE DEFENDANT:  Yes.  Yes, your Honor.  I --

14             THE COURT:  And you knew that there were false

15   statements in the applications and you submitted the

16   applications with the false statements in order to get money

17   that you were not entitled to get from the banks, is that

18   correct?

19             THE DEFENDANT:  Yes, your Honor.  Me or others.

20   Personally not me.  Me or others was involved in that.  I was

21   aware about it, and the mistake, I'm sorry for that.  And I've

22   taken the guilty charge.

23             THE COURT:  Well, hold on.  Hold on.  The reason for

24   these questions, Mr. Lev, is that you keep adding individual

25   comments like "this was a mistake."

Kc7WlevP

 1           THE DEFENDANT:  Your Honor --

 2           THE COURT:  No.  Hold on.  Hold on.

 3           The question is whether you personally submitted false

 4    applications, or caused others to submit false applications,

 5    knowing that they contained false statements in order that you

 6    would get money from the banks that you knew that you were not

 7    entitled to get from the banks.

 8           THE DEFENDANT:  Yes, your Honor.  With others, yes,

 9    your Honor.  Yes.

10           THE COURT:  OK.

11           Mr. Fiddelman, do you want me to ask other questions

12    of the defendant?

13           MR. FIDDELMAN:  No, your Honor.  I think that

14    sufficiently clarifies it.  Thank you very much.

15           THE COURT:  Sure.

16           There was one other statement by the government that I

17    wanted to follow up with you, Mr. Lev, and that was with

18    respect to the issue of wire fraud, which is the second object

19    of the conspiracy.  The government said that you, that their

20    evidence would show that you caused others to use the internet

21    to submit the financial applications.

22           THE DEFENDANT:  Yes.  Yes, your Honor.

23           THE COURT:  Did you do that?

24           THE DEFENDANT:  Yes, your Honor.

25           THE COURT:  OK.

Kc7WlevP

1          Does the government want me to ask any other questions

2     of the defendant?

3          MR. FIDDELMAN:  No, your Honor.  Thank you very much.

4          THE COURT:  OK.  Never feel reluctant to make sure

5     that my allocution is sufficient.

6          THE DEFENDANT:  Thank you.

7          MR. FIDDELMAN:  Thank you, your Honor.  I think that's

8     sufficient.

9          THE COURT:  OK.

10         Mr. Lev, how do you plead to the charge against you in

11    the superseding information; guilty or not guilty?

12         THE DEFENDANT:  I'm guilty, sir, your Honor.

13         THE COURT:  Are you pleading guilty because you are,

14    in fact, guilty?

15         THE DEFENDANT:  Yes, your Honor.  I'm guilty.

16         THE COURT:  Are you pleading guilty voluntarily, of

17    your own free will?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  Before I finally accept the defendant's

20    plea, Mr. Vinegrad, do you want me to ask any other questions

21    of the defendant?

22         MR. VINEGRAD:  No, your Honor.

23         THE COURT:  Do you know of any reason that I should

24    not accept his plea?

25         MR. VINEGRAD:  No, your Honor.

Kc7WlevP

1          THE COURT:  Before I finally accept the defendant's

2     plea, does the government want me to ask any other questions of

3     the defendant?

4          MR. FIDDELMAN:  No, your Honor.

5          THE COURT:  Does the government know of any reason

6     that I should not accept his plea?

7          MR. FIDDELMAN:  No, your Honor, it does not.

8          THE COURT:  OK.

9          Mr. Lev, because you acknowledge that you are guilty

10     as charged in Count One of the superseding information, because

11     I find that you know your rights and are waiving them knowingly

12     and voluntarily, because I find that your plea is entered

13     knowingly and voluntarily and is supported by an independent

14     basis in fact containing each of the essential elements of the

15     offense, I accept your guilty plea, and I adjudge you guilty of

16     the offense to which you have pleaded.

17          Mr. Lev, the probation department will now prepare the

18     presentence report to assist me in sentencing you.  You will be

19     interviewed by the probation department.  It's very important

20     that the information you provide to the probation department be

21     truthful and accurate.  The presentence report is very

22     important to me in my decision as to what your sentence will

23     be.

24          You and your lawyer will have the opportunity to

25     examine the presentence report, to challenge or comment on

Kc7WlevP

1   anything contained in the report and then to speak on your

2   behalf at sentencing.

3           Mr. Fletcher, can we get a date.

4           THE DEPUTY CLERK:  Thursday, April 15, at 2:30.

5           THE COURT:  April 15 at 2:30 p.m.  Is that

6   satisfactory with everyone?

7           THE DEFENDANT:  I'm just checking not Passover.

8           MR. VINEGRAD:  I believe it's after Passover.

9           THE DEFENDANT:  OK.

10          THE DEPUTY CLERK:  Let's do another date.

11          THE COURT:  The date's OK with the defense?

12          THE DEPUTY CLERK:  Thursday, Thursday, April 2.  Oh,

13  no.  Was April 15 Passover, counsel?

14          MR. VINEGRAD:  April 15 -- I thought I had said that

15  April 15 was after Passover.

16          THE DEPUTY CLERK:  Oh, OK.

17          MR. VINEGRAD:  Which is fine.

18          THE DEPUTY CLERK:  OK.  April 15 at 2:30.

19          THE COURT:  And OK with the government.

20          MR. FIDDELMAN:  Yes, your Honor.

21          THE COURT:  All right.  Sentence April 15 at 2:30 p.m.

22          No applications with respect to bail status.

23          MR. FIDDELMAN:  That's correct.  The government

24  consents to the defendant's bail conditions remaining in effect

25  pending sentencing.

Kc7WlevP

1      THE COURT:  OK.  And the defense has no applications

2  with respect to the bail.

3      MR. VINEGRAD:  Not at the moment, Judge.  I anticipate

4  making one shortly having to do with one of Mr. Lev's daughters

5  and his desire to see her, and she's out of the district.  But

6  I'll do that in writing after consulting with the government.

7      THE COURT:  OK.  Thank you.

8      MR. VINEGRAD:  But thank you.

9      THE COURT:  Thank you.

10      Mr. Lev, do you understand that if you fail to return

11  for sentencing on April 15, 2021, or any adjourned date, you

12  will be guilty of a criminal act for which you could be

13  sentenced to prison, totally separate, apart from and in

14  addition to any other sentence that you may receive for the

15  crime to which you just entered a plea of guilty?

16      Do you understand that?

17      THE DEFENDANT:  Yes, your Honor.

18      THE COURT:  Do you also understand that all of the

19  conditions of your bail have been continued and that the

20  violation of any of those conditions can have severe

21  consequences for you?

22      Do you understand that?

23      THE DEFENDANT:  Yes, your Honor.

24      THE COURT:  All right.

25      I should add that defense submissions are due 14 days

Kc7WlevP

1    before sentence; government submissions eight days before

2    sentence.  All right?

3          All right.  I look forward to seeing you all -- seeing

4    all of you -- on the date fixed for sentence or any adjourned

5    date.

6          Anything further?

7          MR. FIDDELMAN:  Not from the government.  Thank you.

8          MR. VINEGRAD:  Not from the defendant.  Thank you.

9          THE COURT:  OK.

10         I will return Court Exhibit 1 to the government.

11   We'll probably put it in the mail or some form of message

12   service.

13         Thank you, all.

14         MR. FIDDELMAN:  Thank you.

15         THE COURT:  Bye now.  Stay well.  Stay safe.

16         (Adjourned)

17

18

19

20

21

22

23

24

25